```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
                                                              :
                                                              :
                                                              :    24 Civ. 1871 (LGS)
IN RE: SILICON VALLEY BANK (CAYMAN                            :
ISLANDS BRANCH)                                               :    OPINION AND ORDER
                                                              :
                                                              :
                                                              :
                                                              :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Appellants Andrew Childe, Niall Ledwidge and Michael Pearson, in their capacities as Joint Official Liquidators (the "JOLs") of Silicon Valley Bank (Cayman Islands Branch) ("SVB Cayman") appeal a decision of the United States Bankruptcy Court for the Southern District of New York dismissing Appellants' Verified Petition for Recognition of Foreign Solvency Proceeding (the "Petition") pursuant to Chapter 15 of the United States Bankruptcy Code ("Chapter 15"), *In re Silicon Valley Bank (Cayman Islands Branch)*, 658 B.R. 75 (Bankr. S.D.N.Y. 2024) ("*In re SVB*").  Appellee in this action is the Federal Deposit Insurance Corporation (the "FDIC"), in its corporate capacity and as receiver for Silicon Valley Bank, Santa Clara ("SVB") and for Silicon Valley Bridge Bank (the "Bridge Bank").  For the reasons below, the dismissal of the Petition is affirmed.

**I.    BACKGROUND**

The following facts appear to be undisputed and are taken from the record on appeal unless otherwise noted.

   **a.   SVB Cayman**

SVB was founded in 1983 as an FDIC-insured, state-chartered bank headquartered in California.  On August 16, 2007, SVB registered in the Cayman Islands as a foreign company in

accordance with the Cayman Islands Companies Act.  SVB then applied for and was granted a Class B banking license from the Cayman Islands Monetary Authority, which allowed SVB to establish an active branch in the Cayman Islands: SVB Cayman.  SVB Cayman was SVB's only deposit-taking foreign branch, although SVB had affiliate relationships and joint ventures with foreign banks in China and the United Kingdom.  SVB Cayman did not have a physical presence in the Cayman Islands, other than a mailing address, and did not have assets or employees in the Cayman Islands.

Three types of accounts were available through SVB Cayman: (1) a Eurodollar Sweep Account, (2) a Eurodollar Operating Account and (3) a Eurodollar Money Market Account.  The account agreements for each type of account stated that the accounts were governed by and construed according to California law, were also subject to Cayman Islands law and were not FDIC insured.  The account agreements also stated that account balances were not deposits as defined by the FDIC and that, should the bank fail, accountholders would be considered general creditors and not depositors.  The Eurodollar Sweep Account operated by periodically transferring or "sweeping" money between an interest-bearing account held at SVB Cayman and an SVB account in the depositor's name in the United States.  In contrast, the SVB Cayman Money Market and Operating Accounts had no U.S. counterpart accounts and were established solely at SVB Cayman in the Cayman Islands.

SVB Cayman was a branch of SVB.  The relationship between SVB and SVB Cayman was governed by an intra-group service level agreement ("SLA"), under which SVB's California office fulfilled certain of SVB's staffing needs, including finance, IT services and legal and risk management.  The SLA acknowledges that SVB Cayman is regulated by Cayman Islands regulators while SVB is regulated by California regulators.  SVB Cayman had some

2

independence from SVB in its operations, including being operated by a dedicated team, permitted to terminate the SLA with notice and permitted to conduct independent audits of SVB's books and records.

### b. SVB Collapse

In March 2023, SVB collapsed. On March 8, 2023, SVB liquidated investments to cover deposits; on March 9, 2023, SVB customers withdrew more than $40 billion from the bank, and SVB closed with a negative cash balance of $958 million. On March 10, 2023, the California Department of Financial Protection and Innovation determined that SVB's liquidity was inadequate, and that SVB was insolvent and conducting its business in an unsafe manner due to its financial condition. The Department ordered that SVB be placed in receivership. Since March 2023, the FDIC has acted as receiver for SVB.

On March 13, 2023, the FDIC as receiver transferred all deposits and substantially all assets of SVB, including those of SVB Cayman, to the newly created Bridge Bank. Pursuant to Treasury Secretary Janet Yellen's invocation of the "systemic risk exception," the FDIC announced that it would insure and pay the full amount of deposits for all insured SVB depositors, including amounts above the usual $250,000 cap. On March 27, 2023, the FDIC entered a Purchase and Assumption Agreement with First-Citizens Bank & Trust Company ("First-Citizens"), which provided for First-Citizens' purchase at a discount of $72 billion of the Bridge Bank's assets. The agreement also gave First-Citizens the express option to purchase the foreign branches of SVB but did not include SVB Cayman. Consequently, SVB Cayman was not purchased by First-Citizens.

At the time of the SVB collapse, SVB Cayman held approximately $866 million in deposits in its customer accounts of all types. SVB Cayman ceased operations when the FDIC

was appointed receiver of SVB.  On March 31, 2023, SVB Cayman depositors with Eurodollar Operating Accounts and Eurodollar Money Market Accounts received a notice from the FDIC that their balances were not deposits and therefore that their status was that of general unsecured creditors with priority junior to both insured and uninsured depositors.  As such, the depositors in these SVB Cayman accounts are unlikely to receive any recovery.  In contrast, the holders of Eurodollar Sweep Accounts did not receive this notice.  Their accounts were granted insured deposit status, despite the language in the account agreements for all three account types that the accounts were not FDIC-insured.  The FDIC's stated reason for treating the deposits in the Eurodollar Sweep Accounts as insured was that these accounts had parallel FDIC-insured U.S. accounts where the funds were "swept."

  **c. Cayman Proceedings**

  Petitioners below, who are Appellants here, were classified as uninsured, general creditors of the SVB receivership.  On June 13, 2023, they submitted a Winding Up Petition to the Cayman Islands' Grand Court seeking the winding up SVB Cayman and appointment of JOLs of SVB Cayman pursuant to Cayman Islands law.  The FDIC provided written notice on June 27, 2023, to the Cayman Registrar of Companies that SVB had stopped doing business in the Cayman Islands as of March 10, 2023, and requested SVB's removal from the Companies Register to reflect the deregistration.

  On June 30, 2023, the Grand Court filed a winding-up order as to SVB, "a foreign company" registered under Cayman Islands law, and appointed Appellants as JOLs to act only "in respect of the assets and affairs of [SVB Cayman] and its creditors."  On July 21, 2023, the Grand Court issued a decision granting leave to amend the winding-up order and elaborating on its decision to issue the order.  The Grand Court held that it had jurisdiction to issue the winding-

up order as to SVB, based on SVB's connection with the Cayman Islands via the conduct of its Cayman branch among other factors. The Grand Court found that the winding-up order was justified by the insolvency of SVB, the need to investigate the apparent removal of funds from SVB Cayman into the SVB receivership and the need to investigate the position of the Cayman depositors. The Grand Court's January 11, 2024, order states, "The JOLs are the representatives of an estate and a trust that is subject to Cayman Islands proceedings." The court noted, "It is the intention of FDIC not to submit to the jurisdiction of the Grand Court." On January 11, 2024, the Grand Court, on the JOLs' application, entered an order sanctioning the JOLs' application for recognition by the United States Bankruptcy Court under Chapter 15 and holding that the JOLs are the representatives of an estate and trust subject to Cayman Islands proceedings.

    **d.  U.S. Chapter 15 Bankruptcy Petition**

On January 18, 2024, the JOLs sought to commence a case under Chapter 15 of the Bankruptcy Code seeking recognition of the Cayman Islands liquidation proceedings as a foreign main proceeding. *See* 11 U.S.C. § 1504 ("A case under this chapter [15] is commenced by the filing of a petition for recognition of a foreign proceeding . . . ."). The FDIC, as receiver for SVB and the Bridge Bank, objected to the recognition on several grounds, including that SVB Cayman is not a "person" eligible for relief under section 109(a) of the Bankruptcy Code and, as a foreign branch of an FDIC-insured bank, is ineligible to be a debtor under section 109(b) of the Bankruptcy Code.

After a full-day evidentiary hearing, the Bankruptcy Court on February 22, 2024, dismissed the JOLs' Petition. *In re SVB*, 658 B.R. at 79, 92. Specifically, the Bankruptcy Court held that SVB, of which SVB Cayman is an inseparable part, is ineligible to be a Chapter 15

5

debtor under 11 U.S.C. §§ 109(b) and 1501(c)(1) because SVB is an FDIC-insured bank.[1]  *Id.* at 88-90.  The JOLs appealed the dismissal of the Petition and the holding that SVB Cayman is ineligible for relief under § 109(b).

## II.     LEGAL STANDARD

District courts have appellate jurisdiction over bankruptcy court rulings under 28 U.S.C. § 158(a)(1).  Section 158(a)(1) confers jurisdiction on the "district courts of the United States . . . to hear appeals [] from final judgments, orders, and decrees" of the Bankruptcy Court.  "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo."  *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012);[2] *accord In re Pecoraro*, No. 22 Civ. 7249, 2024 WL 1988904, at *2 (S.D.N.Y. May 6, 2024).  Mixed questions of fact and law are also reviewed de novo.  *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003); *accord In re Hopkins Fabrication*, *LLC*, 600 F. Supp. 3d 215, 232 (D. Conn. 2022).  "In reviewing a decision of a bankruptcy court, the district court may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 598 B.R. 102, 111 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 818 F. App'x 48 (2d Cir. 2020).  "Any arguments not raised in the bankruptcy court are

---

[1] The Bankruptcy Court outlined in dicta an avenue that may be available to the JOLs under § 1509, to sue in a U.S. court to collect or recover on a claim involving property of the debtor even in the absence of recognition.  *Id.* at 90-92.  The JOLs brought an action in the United States District Court for the District of Columbia, in which motions to dismiss are pending.  *See* Mots. to Dismiss, *Ledwidge v. FDIC*, No. 24 Civ. 513 (D.D.C. July 22, 2024), ECF Nos. 12 and 15.

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal." *Id.* (citing *In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994)).

### III.   DISCUSSION

At issue is Appellants' Petition seeking recognition of the Cayman Islands liquidation proceedings as a foreign main proceeding pursuant to Chapter 15.  The purpose of Chapter 15 is to address cross-border insolvency by providing a means to achieve cooperation between U.S. courts and foreign courts.  *See* 11 U.S.C. § 1501(a).  Recognition in this case would allow the assets of SVB Cayman to be liquidated under Cayman law and the jurisdiction of the Cayman Islands' Grand Court.  *See generally id.* §§ 1528, 1529.  However, Chapter 15 does not apply to "a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b)."  *Id.* § 1501(c)(1).

#### a.   Section 109(b)

The dismissal of the Petition is affirmed because SVB Cayman was at all relevant times a foreign branch of a United States, FDIC-insured bank and, as such, is ineligible to be a debtor under 11 U.S.C. § 109(b).  Under § 109(b), a person may be a debtor under Chapter 7 of the Bankruptcy Code only if that person is not, among other things, a domestic bank "which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act . . .[.]"  The exclusions enumerated in § 109(b) also are applicable to determining which entities are eligible for Chapter 15 relief.  11 U.S.C. § 1501(c)(1) (stating that Chapter 15 "does not apply to -- (1) a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b)"); *see Drawbridge Special Opportunities Master Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 249-51 (2d Cir. 2013) (concluding that § 109 applies to Chapter 15).  It is

undisputed that, as a domestic bank insured by the FDIC, SVB is excluded from eligibility to be a debtor under § 109(b) and therefore from eligibility under Chapter 15.

SVB Cayman, as a branch of SVB without a separate legal existence from SVB, is also excluded from Chapter 15 eligibility pursuant to § 109(b).  As Appellants acknowledge, SVB and SVB Cayman were not separate corporations or legal entities, and SVB Cayman operated as a branch of SVB.  SVB is the legal entity that held the license allowing SVB Cayman to operate in the Cayman Islands.  SVB Cayman did not exist or operate entirely independently from SVB and, pursuant to the SLA, relied on SVB to provide it with certain services and infrastructure.  The Cayman Islands' Grand Court, in its winding-up order, similarly concluded that SVB Cayman was a branch of SVB and not a separate legal entity.  As the Bankruptcy Court correctly held, SVB Cayman is excluded from eligibility for Chapter 15 relief because it is a branch of a domestic bank insured by the FDIC.  *In re SVB*, 658 B.R. at 88-89.

### b.  SVB Cayman as an "Orphaned" Branch

Appellants advance a series of related arguments for why SVB Cayman should not be considered an excluded bank under § 109(b), each of which is premised on the idea that SVB Cayman has been severed from SVB and is no longer the foreign branch of a domestic bank.[3] Appellants argue that, when the Petition was filed, SVB Cayman was no longer an excluded bank under § 109(b), but rather had become "an estate and a trust that is subject to Cayman Islands proceedings" as stated in the Grand Court's January 11, 2024, order.  Specifically, they argue that in March 2023, as a result of the FDIC receivership, "SVB ceased to exist as a bank."  SVB Cayman was then "orphaned" by the receiver's failure to transfer SVB Cayman to First-Citizens.

---

[3] These arguments, although not extensively addressed in the Bankruptcy Court's opinion, were raised in the briefing below and therefore preserved for appeal.

8

Later, in June 2023, by operation of the Cayman winding-up order, SVB Cayman became an insolvency estate and trust under Cayman Islands law. Appellants conclude that SVB Cayman was thus severed from SVB and its former bank identity and is therefore not an excluded bank under § 109(b). Appellants cite no legal authority to support this extraordinary proposition, and each step of its foundation is faulty, as explained below.

      **i.    FDIC Receivership**

First, Appellants argue that the FDIC receivership ended the legal existence of SVB as a bank and that SVB Cayman became a separate, "orphaned" entity when it was not transferred to First-Citizens. SVB did not cease to exist as a bank for purposes of the Bankruptcy Code when the FDIC placed it in receivership. SVB continued to be an FDIC-insured bank subject to exclusion pursuant to § 109(b) so that SVB's liquidation was subject to the procedures of the FDIC and not the bankruptcy court. The cases cited by Appellants to argue otherwise are inapposite. *See FDIC v. N. Savannah Props., LLC*, 686 F.3d 1254, 1259-60 (11th Cir. 2012) (explaining that when the FDIC becomes receiver for a failed bank, it succeeds to all of that institution's rights, titles, powers and privileges and the failed bank ceases to exist); *McAninch v. Wintermute*, 491 F.3d 759, 767 (8th Cir. 2007) (same); *Buczkowski v. FDIC*, 415 F.3d 594, 596-97 (7th Cir. 2005) (noting that the "FDIC can step into the shoes of failed banks" and the failed bank "vanishe[s] in a puff of smoke"). These cases all concern when and how the FDIC, as receiver to a failed bank, is substituted for the bank as a party to litigation and do not concern the effect that the FDIC receivership has on a branch's status as a branch of that bank. These cases are not in tension with Second Circuit case law that the FDIC "steps into the shoes of the failed bank" and succeeds to the bank's assets, rights, titles and other aspects of the bank entity. *See Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004) (The FDIC as receiver "has a

responsibility to marshal the assets of the bank and to distribute them to the bank's creditors and shareholders."); 12 U.S.C. § 1821(d)(2) (The FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution."). When SVB entered receivership, it may no longer have existed as an entity capable of being named as a party to litigation. But the FDIC stepping into SVB's shoes and succeeding to SVB's rights does not transform SVB Cayman into a new legal entity that is something other than the foreign branch of a domestic, FDIC-insured bank.

This conclusion is consistent with the overarching purpose of FDIC receiverships to give the FDIC exclusive powers to administer failed banks and their assets and liabilities. *See* 12 U.S.C. § 1821(c)(2)(C) (The FDIC "shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of the Corporation's rights, powers, and privileges."); *id.* § 1821(d)(13)(C) ("No attachment or execution may issue by any court upon assets in the possession of the receiver."); *id.* § 1821(d)(13)(D) (limiting judicial review over claims related to determination of rights regarding assets under the receiver's control or of the receiver's actions). The cited legislation was passed in the wake of the savings and loan crisis and "sought to put the Federal deposit insurance funds on a sound financial footing, provide funds to deal expeditiously with failed depository institutions, and strengthen the enforcement powers of Federal regulators of depository institutions." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014). Nothing suggests that Congress intended to alter this scheme through Chapter 15.

It would run counter to this legislative purpose to hold that the initiation of an FDIC receivership converts former branches into separate entities that may then independently pursue relief through the bankruptcy process, outside of the FDIC's control. Congress carved out FDIC-

insured banks from the default bankruptcy process so as not to interfere with the FDIC's exclusive procedures for failed banks. Here, SVB Cayman was not "orphaned" because the FDIC asserted jurisdiction over the branch's assets and the claims of its depositors who would be treated as general unsecured creditors. Appellants want Chapter 15 to compete and interfere with the FDIC's treatment of SVB Cayman, which is exactly what the exclusion of FDIC-insured banks from Chapter 15 was trying to avoid.

### ii. Insolvency Trust Entity

Second, Appellants argue that SVB Cayman ceased being a branch of SVB and became a Cayman Islands insolvency trust upon the issuance of the Grand Court's January 11, 2024, order. As explained above, SVB Cayman has never been a separate juridical entity from SVB. The affidavit of Appellants' insolvency expert does not explain how Cayman law somehow converted SVB Cayman and SVB, of which SVB Cayman is a part, into entities that are eligible to seek Chapter 15 relief, when the fundamental character of the bank as an FDIC-insured domestic bank is unchanged. Appellant's expert instead confirmed that any insolvency trust incorporated the assets and affairs of SVB as a whole, even if the practical reach of the Cayman Islands liquidation proceedings was limited to the portion of SVB subject to Cayman Islands jurisdiction. This does not support the conclusion that SVB Cayman has been separated from SVB.

Even assuming that SVB Cayman is part of a Cayman insolvency trust, the creation of an insolvency trust does not give that trust new or different property rights from those originally held by the branch, nor does it change the nature of SVB Cayman as a branch of SVB. Instead, the JOLs are, at most, stepping into the shoes of SVB Cayman, which remains a bank branch without a separate legal existence or rights from SVB. In contrast, the FDIC stepped into the shoes of SVB -- including SVB Cayman -- and assumed all of SVB's rights and liabilities as described

above. As the Bankruptcy Court stated, "the closing of [SVB] and the commencement of the SVB Receivership did not result in [SVB's] and, consequently, SVB Cayman's transmogrification into an entity eligible for bankruptcy." *In re SVB*, 658 B.R. at 88.

### iii. *In re Irish Bank* and *In re Colorado Industrial Bank*

Third, Appellants rely on *In re Irish Bank Resolution Corp. Ltd.*, 538 B.R. 692 (D. Del. 2015), and *In re Colorado Industrial Bank of Fort Collins*, 84 B.R. 735 (Bankr. D. Colo. 2024), to argue that the status of SVB Cayman should be considered as of the filing date of the Petition, when SVB Cayman already had been "orphaned." These cases are factually distinct and do not disturb the conclusion that SVB Cayman is excluded by § 109(b). *In re Irish Bank* concerned a foreign bank that closed its United States branches prior to the foreign bank's filing of a Chapter 15 petition, making it a foreign bank without domestic branches and thus eligible under § 109(b). *See* 538 B.R. 692, 696-97 (D. Del. 2015). In contrast, SVB Cayman has always been a foreign branch of a domestic bank. *In re Colorado Industrial Bank of Fort Collins* concerned an industrial bank that was not an FDIC-insured bank within the exclusion of § 109(b)(2), and was thus eligible to be a debtor. *See* 84 B.R. 735, 737-38 (Bankr. D. Colo. 1988). Again, in contrast, SVB Cayman is a branch of an FDIC-insured domestic bank and therefore excluded by § 109(b).

## IV. CONCLUSION

For the reasons above, the Bankruptcy Court's dismissal of the Petition is **AFFIRMED**. The request for oral argument is **DENIED** as moot.

The Clerk of Court is respectfully directed to close this case.

Dated: February 7, 2025
      New York, New York

                                        LORNA G. SCHOFIELD
                                      UNITED STATES DISTRICT JUDGE